[Crim. No. 8090. Second Dist., Div. One. Dec. 10, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. BENJAMIN H. MORTENSEN, Defendant and Appellant.

Mel Pierovich for Defendant and Appellant.

Stanley Mosk, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—Defendant was accused of assault with a deadly weapon, a felony (violation of Pen. Code, § 245). The assertion of the prosecution was that the assault, upon a police officer, was committed with an automobile. In a jury trial he was convicted. He was sentenced to imprisonment in the county jail for a year. He appeals from the judgment and the order denying his motion for a new trial.

A contention of appellant is that the evidence was insufficient to support the verdict.

On March 7, 1961, while Officer Delgado was riding a motorcycle on the Pasadena Freeway in the performance of his duties as a traffic officer, he saw the defendant drive a 1951 Cadillac automobile in a weaving or side-to-side manner in the eastbound center lane of the freeway. After the officer had observed the defendant driving in such manner approximately one-half mile (from Riverside Drive to Avenue 26), the officer saw him change to the outside lane, while traveling about 50 miles an hour, by turning directly in front of a vehicle which was in the outside lane—and in so doing he forced the driver of the other vehicle "to brake suddenly" in order to avoid a collision. Thereupon the officer overtook the defendant and required him to stop his automobile in the parking space on the freeway shoulder at Avenue 38. While the officer was parking his motorcycle

about 10 or 15 feet behind the automobile, the defendant walked to that place, and the officer asked him for his driving license. He replied that he did not have a license. The officer noticed that defendant's eyes were bloodshot, that his breath had the odor of alcohol, and his balance was unsteady. The officer made a line upon the pavement and proceeded to give the defendant a sobriety test by asking him to walk the line. He performed the test "in a somewhat satisfactory manner," but he was wobbly. Then the officer gave him a further test which consisted of trying to touch the tip of the nose with the tip of the finger, while standing with feet together, head leaning backward, and eyes closed. He performed the test in a very slow and careful manner. The officer was of the opinion that defendant was "under the influence" but that it was a "borderline" question as to whether he should be permitted to drive. While they were talking further, the officer observed that defendant was having difficulty in maintaining his balance. Thereupon, the officer gave the sobriety tests again and decided that defendant was "under the influence" to a degree that he should not be permitted to drive. When the officer said that he would have to arrest defendant, the defendant said that he was "not going to be booked again for 502." (According to the officer's testimony, that number referred to the former section of the Vehicle Code "for drunk driving.") At that time the defendant ran to his automobile and got into the driver's seat. The officer went to the driver's side of the automobile, told defendant he was under arrest, and then reached through the window and attempted to get the ignition key. During that time the defendant was trying to start the motor, and was pushing and hitting the officer's hands. While the officer's arm was between the steering wheel and the horn ring, the automobile suddenly backed up, catching the officer's arm in the steering wheel, and knocking him backward but not down. The door flew open, and the officer ran to the defendant and grabbed him by the arms and told him to stop. At that time, while the officer was between the open door and the side of the automobile, the automobile suddenly went backward and knocked the officer down. The automobile continued going backward and ran over the motorcycle. The officer went toward the front of the automobile and into the lane next to the freeway shoulder. Then the automobile went forward in a fast manner toward the officer, who ran

farther onto the freeway in order to avoid being hit by the automobile.

The officer testified that defendant then drove the automobile away at a high rate of speed—continuing eastbound on the freeway; at that time a passing motorist, Mr. Byrne, stopped and asked the officer if he was all right; the officer entered Byrne's automobile, and they followed the defendant who was traveling at a rate of more than 80 miles an hour; defendant drove off the freeway at Avenue 64 (the Marmion Way off ramp) and continued on Marmion Way (about one-half mile) to a place which is about 500 feet south of Pasadena Avenue where he stopped in the center of the street; they overtook the defendant at that place, which was about 3 miles from Avenue 38 where the officer had been knocked down; the officer went to the passenger side of defendant's automobile, pointed his revolver at defendant, and said, "Stop, or I'll shoot"; the defendant placed his automobile in gear and kept the automobile going backward and forward; during one of those movements the automobile went toward the officer, and it was necessary for him to move aside in order to avoid being hit; the officer fired two shots at the front tire and two shots at the right rear tire; the automobile did not stop, but proceeded northbound into the intersection of Marmion Way and Pasadena Avenue (and Sycamore Street), without making the boulevard stop there, and then turned to the right; the officer and Byrne entered the Byrne automobile, followed defendant, and saw that he had parked his automobile at a place (on Sycamore Street) around the corner of the intersection; at that time he was sitting in his automobile reading a newspaper; when they (officer and Byrne) arrived there they met Officer Furnas, who assisted Officer Delgado in taking defendant out of the automobile and arresting him.

Officer Delgado's wrist and neck were injured during the incident involving defendant's automobile at Avenue 38.

Mr. Byrne testified that, on said March 7, about 1:30 p. m., while he was on the Pasadena Freeway near Avenue 38, he saw Officer Delgado being knocked to the ground by defendant's automobile; the officer was at the side of the automobile and it backed up and knocked him to the ground; the officer lay on the ground, scrambling around trying to get away from the automobile; the automobile ran over the motorcycle; he (witness) stopped his automobile at that place; the

defendant's automobile started forward, and the officer, who had arisen from the ground, fired two shots at the rear tires of defendant's automobile; the officer entered Byrne's automobile and asked him to follow defendant; Byrne complied therewith and drove his automobile at a speed of approximately 85 miles an hour; defendant drove off the freeway at Avenue 64; they overtook him in South Pasadena on Sycamore Street, after driving approximately 3 miles; other officers arrived there soon after Officer Delgado had gone to defendant's automobile; he did not see any officer beat defendant; he (witness) was nervous and excited during this incident.

Officer Furnas testified that on said day, about 2 p.m., he saw the defendant run the boulevard stop at the intersection of Marmion Way and Sycamore Street, and saw him turn the corner there, park his automobile, and immediately pick up a newspaper; about a minute later, Officer Delgado and a citizen (Byrne) arrived; the officers went to defendant and asked him to get out of the automobile; when he refused to get out they took him by the arms, pulled him out of the automobile, and handcuffed him; while they were handcuffing him, he was lying on the pavement; when they picked him up, he had blood on his face; neither of them hit him; the odor of alcohol was on defendant's breath; about two minutes prior to seeing defendant run the boulevard stop, he (Officer Furnas) heard three or four shots, and he thought the shots were in the area of the Arroyo Seco playground, about three blocks away from him.

Defendant testified: He was traveling about 30 or 35 miles an hour when Officer Delgado stopped him. After the sobriety tests had been given, the officer said, ''Well, okay.'' Defendant went to his automobile, entered it, and started the motor. Then the officer reached through the window to get the automobile keys—his arm was through the horn ring and the steering wheel. Defendant tried to get the ''arm out of there,'' and inadvertently the officer knocked the gear shift (lever) down into reverse. The automobile backed up. At that time the horn was blaring, the gas pedal was stuck, and ''just everything went bang, bang, bang.'' Finally, the officer got his arm out of the window, went to the front of the automobile, and fired a pistol. Then defendant ''took off'' down the freeway, but he did not know how fast he was going. The officer's statement that defendant was going 85 miles an hour is ''a bunch of baloney.'' He (defendant) did

not stop until he arrived at Marmion Way and Sycamore Street, where he was arrested. He did not go through "a boulevard stop." He never tried to run the officer down with the automobile. He does not know whether or not the officer fell down. He did not recall going over the officer's motorcycle, but it was possible that he did run over it. While the officer's arm was in the steering wheel, he (defendant) was having "a heck of a time" trying to get control of his automobile, and the officer was impeding him. When the officers were arresting him, someone hit him on the head, knocked him to the pavement, and broke his nose. The last time he had had an alcoholic drink was a week prior to this incident. He does not have a driver's license. He is a painting contractor, and on the day involved here he was on the way to Arcadia to make an estimate for painting work, but since this incident he had not gone there to make the estimate. Later, when he examined his automobile he found two bullets in the right front hub cap, and he found that a bullet had gone through the rear tire.

When defendant was asked why he stopped at Marmion Way and Sycamore Street, he said he "realized it would be kind of foolish trying to get away."

When defendant was asked whether he had picked up "a scratch sheet" to read, at the time he stopped on Sycamore Street, he replied: "It could have been. Sports section." When he was asked whether he was going to the racetrack at Arcadia, he replied: "Killing two birds with one stone. I thought if I had enough time I would go out for the last race."

Three persons, who were employees at a dry cleaning shop on the corner of Marmion Way and Sycamore Street, testified to the effect that they saw defendant in the custody of police officers and that blood was on his face; and that they did not hear any shots. An operator of a gasoline service station at that intersection testified that he saw blood on defendant's face; and that he did not hear any shots.

On rebuttal, Officer Delgado testified that he did not fire any shots on the freeway; and that the first time he fired shots was after defendant stopped on Marmion Way.

Appellant argues, with respect to alleged insufficiency of the evidence, that there was no evidence that he used, or attempted to use, his automobile as a weapon, or as anything, with which to strike the officer; that the witness Byrne refuted the officer's testimony as to the place where the shots

were fired (the witness stating the place was on the freeway, and the officer stating it was on Marmion Way); and that the testimony of the officer is inherently improbable.

Section 245 of the Penal Code (as it read at the time of the incident herein) provides: "Every person who commits an assault upon the person of another with a deadly weapon or instrument or by means of force likely to produce great bodily injury is punishable by imprisonment in the State prison . . . or in a county jail . . . or by fine . . . or by both . . ." (That section now provides that such an assault upon a peace officer, when he is engaged in the performance of his duties, is a felony—there is no provision for imprisonment in a county jail or for a fine.) "A deadly weapon is one likely to produce death or great bodily injury." (People v. Morlock, 46 Cal.2d 141, 145 [292 P.2d 897].)

 There was evidence herein that after the sobriety tests and after the officer stated he would have to arrest defendant, the defendant said in effect that he was not going to be booked again for "drunk driving"; that when the defendant was proceeding to start the motor and when the officer was reaching for the ignition key, the automobile was backed and the steering wheel struck and injured the officer's arm; that thereafter when the officer was trying further to prevent the defendant from driving, the automobile was backed and the open door struck the officer and knocked him down, and the automobile proceeded backward and ran over the officer's motorcycle; that thereupon, after the motorcycle was not usable and while the officer was standing toward the front of the automobile, the automobile went toward him in a fast manner, missed him (as he ran aside), and then it went away at a high rate of speed. There was also evidence that when defendant stopped in the center of Marmion Way, about 500 feet from Pasadena Avenue, he again drove his automobile backward and forward and toward the officer in such a manner that the officer had to move aside in order to avoid being hit.

Defendant's asserted explanation of his act, committed on the freeway, includes statements to the effect that the officer's arm struck the reverse gear lever on two occasions and caused the automobile to go backward on two occasions, that the gas pedal stuck, that the automobile was out of control, that when the shooting started he "took off" immediately because it was "flight or fight" and he was scared. The officer testified that the shooting did not occur during the freeway incident, but

that it occurred on Marmion Way (a few blocks from Sycamore) when defendant started to drive away the second time. It is true that the testimony of witness Byrne, with respect to the place where the shooting occurred, is inconsistent with the testimony of the officer on that subject. The testimony of Officer Furnas, however, tends to corroborate the testimony of the officer (Delgado) in that Officer Furnas, who was near Sycamore Street, said that he heard shots which seemed to be about three blocks away. As above stated, the place referred to as Avenue 38 and the freeway was about three miles away from Officer Furnas. The witness Byrne saw the defendant's automobile knock the officer down, saw the automobile run over the motorcycle, and saw the automobile leave immediately at a high rate of speed and thereafter travel at a rate of approximately 85 miles an hour. Several of defendant's answers, as a witness, were non-responsive, or evasive or inconsistent. Some examples thereof are: (1) When he was asked how fast he drove on the freeway, he said that the officer's statement that he drove 85 miles an hour was "a bunch of baloney," because he (defendant) did not know how fast he drove. Later, he said he was chased at the rate of 80 miles an hour. Later, he said he did not drive over 50 miles an hour. (2) When he was asked whether the officer put the automobile in reverse, he said he must have, and "he did, yes, indeed," and "that's the whole point of it," he inadvertently knocked the gearshift lever down. (3) When he was asked what happened while he (defendant) was trying to get the gear in neutral, he said: "Well, I mean, he [officer] was struggling and struggling, and we went back and forth a couple of times there, I guess, and the next thing I know, he's right out in front of me, with his gun out, firing his bullets." (4) When he was asked whether he was busy trying to get control of the automobile, he said: "I had a heck of a time. I—like I say, my horn was blaring away, and my gas pedal had stuck, and I had a rough time." (6) When asked whether he picked up something to read, just after he parked on Sycamore Street, he said: "I had papers in my car, had a contract, and I got everything—a lot of things in my car," and "All right, so maybe I looked at the paper." (7) When asked whether it was a scratch sheet that he was reading, he said that it could have been—could have been the sports section. Later, he said it was the sports section. Later, he said he did not know what section it was,—and: "Now, believe me, I'm panic stricken at the time. I don't know what

to say when somebody is brandishing a revolver at you. I mean, well, who knows what we do?''

The evidence was sufficient to support the verdict.

Appellant asserts that the testimony of Officer Delgado is inherently improbable. ▮ ''Testimony is not inherently improbable unless it appears that what was related or described could not have occurred.'' *(People* v. *Bahara,* 159 Cal.App.2d 160, 162 [323 P.2d 453].) ▮ It is clear that the officer herein could have been hit by the backing automobile in the manner related by him, and that the automobile could have been driven directly toward him in the manner related. The testimony was not inherently improbable.

▮ Appellant requested that the trial court permit the jury to inspect appellant's automobile, which was then in a parking lot one block from the courthouse. Appellant asserts that the court erred in denying the request. That was a matter within the sound discretion of the court. *(People* v. *Bales,* 189 Cal.App.2d 694, 703 [11 Cal.Rptr. 639].) The court did not abuse its discretion.

Appellant asserts that remarks made by the judge to him in the presence of the jury constituted prejudicial error.

▮ One of such alleged remarks was made under the following circumstances: The deputy district attorney had asked the defendant whether the officers told him what the purpose of the balloon test would be. Defendant answered: ''I wasn't given the time of day.'' The judge said: ''Wait a minute, now. Answer the question. You may answer that.'' It is apparent that the defendant was giving an evasive and frivolous answer. The judge did not err in directing him to answer the question.

▮ Another reference to such alleged error is a series of five questions which the judge asked the defendant, regarding his acts when the officer reached through the window. One of those questions was: ''Why did you have to have your foot on the accelerator when a uniformed officer came over?'' Another question was: ''Did you think you had to resist him in what he was doing?'' The judge did not err in asking the questions. ▮ A judge may ask questions for the purpose of bringing out the facts. *(People* v. *Freeman,* 107 Cal.App. 2d 44, 52 [236 P.2d 396].)

▮ On another occasion, after defendant had testified that he had a feeling that one of the bullets went near his head, the judge said: ''You didn't think he was going to shoot you to death for a traffic violation, did you?'' The

defendant replied: "I had better not answer that." The defendant's counsel told him to answer the question. This specification of error presents an unusual circumstance—where appellant is contending on appeal that the court erred in asking a question which appellant's counsel directed him to answer. There was no error.

After appellant had made the answer above mentioned, to the effect that he "had better not answer," the judge asked him if he always talked the way he was talking on the witness stand, and if that was his usual manner. He replied that he was a little upset and he did not know how to talk "here." The judge did not err in asking those questions.

On another occasion, after appellant's counsel had asked him whether he "had a drink today," the judge said: "You haven't had anything to drink today?" The appellant replied in the negative. Under the circumstances here where counsel for appellant brought up the question of drinking, it cannot be said the judge erred in asking the question. Furthermore, counsel for appellant did not object to the question asked by the judge.

It is not necessary to refer specifically to other questions asked by the judge. The judge did not err in asking questions or making remarks.

Appellant contends that the deputy district attorney was guilty of misconduct in referring to other alleged crimes of appellant. The asserted basis for such contention is a question and answer, as follows: "Q. [By the deputy] What is 502? A. [By Officer Delgado] Well, 502 is the old Vehicle Code section for drunk driving." It is to be noted that immediately preceding that question the officer had testified that when he told defendant that he would have to arrest him, the defendant said he was "not going to be booked again for 502"; and that defendant then ran toward his automobile. The testimony wherein reference was made to "502" was admissible on the theory of indicating motive for fleeing and for the alleged assault. It was proper to present testimony as to the meaning of the expression "502" which the defendant had used in his statement to the officer. At the trial, the defendant did not object to the question or move to strike the answer, or assign the act of the deputy as misconduct. The deputy district attorney was not guilty of misconduct.

The jury requested the reading of the testimony regarding the incident on the freeway after the sobriety tests and prior to the time the officer entered Byrne's automobile. It also

requested a reading of the testimony of those who were present when the pistol was fired. Thereupon the shorthand reporter read portions of the testimony of witnesses referred to in such request, which portions so read are set forth in the reporter's transcript herein. Those portions comprise 39 pages of the transcript. Appellant asserts the trial judge erred in not requiring that all of the requested testimony be read. Appellant refers, in his brief, to three portions of testimony which he asserts should have been read. One such portion was the testimony of Byrne to the effect that the officer got into Byrne's car only one time, and that the shots were fired on the freeway. Another portion was the testimony of defendant to the effect that he did not stop between the time he first stopped and the time he was arrested. Another portion was the testimony of defendant regarding occurrences while the officer's arm was in the automobile, and while the automobile was moving backward and forward. In order to read all the testimony requested by the jury it was necessary for the reporter to refer to many parts of his notes. It is likely that the reporter inadvertently failed to locate the three portions now referred to by appellant. At the trial, the appellant did not call attention to the omission of those parts. In any event it appears that the testimony which was read included testimony similar to that which was omitted. It does not appear that appellant was prejudiced by such omission in reading testimony.

The evidence was sufficient to support the verdict. There was no prejudicial error. The trial was conducted fairly.

The judgment and the order denying the motion for a new trial are affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied January 4, 1963, and appellant's petition for a hearing by the Supreme Court was denied February 6, 1963.