[Crim. No. 263.    Fifth Dist.    Aug. 8, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. GILBERT
VAIZA, Defendant and Appellant.

122

Foone Louie, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse, and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—The defendant, Gilbert Vaiza, was charged with a felony, to-wit: assault with a deadly weapon upon a peace officer (Pen. Code, § 245, subd. (b)); he entered a plea of not guilty and was tried and convicted by a jury. After the denial of his application for probation, he was sentenced to state's prison.

With certain important differences, hereinafter discussed, the facts are recited with substantial similarity by both sides. It is agreed by all parties that about 2 o'clock in the morning of September 28, 1964, the defendant, a young man 21 years of age, was walking along 27th Street in Sacramento. He later claimed that he was taking a stroll in that part of town to secure relief from the turmoil caused by the visit of relatives with children at his home, and that he felt the need of a walk to offset the consequent congestion. At this time, two plain-clothes men of the Sacramento Police Department, Officers Shierts and Wallace, were patrolling the area of 27th and "P" Streets in an unmarked car. They observed the defend-ant moving along the sidewalk, and it seemed to them that he was "out of character for the neighborhood"; so, they circled the block, came back to where they had seen him, and decided to stop and question him. It was later admitted, during the trial, by the defendant that as he had walked along the street he had rifled several cars along the way for matches, cigar-ettes, and whatever "unconsidered trifles" he could find, including a fat wallet in one car and a toy pistol in another.

The defendant objected to giving his name and identifica-tion to the policemen, who presented themselves as law enforcement agents, and asked them if they had a search warrant. They said that they did not need a warrant, as they were simply making inquiry to find out what he was doing at that time of night in that particular neighborhood, and to ascertain where he lived. The police made a "light frisk" of the defendant but found no weapon. After one of the officers reached into the defendant's coat and took the wallet from his pocket, the defendant stepped back and said he would take off the coat for them. While he removed the garment, the officer continued his investigation of the wallet; the defendant said, "All right, stick 'em up"; when the policeman looked up, the defendant was pointing what the officer thought was a gun at him. The appellant insisted, before the trial and at all times during the litigation, that the pistol was only a toy, which had been found by him in one of the cars he had rifled; he said he had intended to give it to one of his two small nephews. The threatened officer, however, insisted that the gun was not a toy, although he said he saw it for only a very short time in an incompletely lighted area and was unable to specify with particularity the characteristics of the object which the defendant pointed at him; he said he had only seen one other gun since that time which was similar. There was no click of

any metal; the defendant held the object instantaneously and then turned around and ran; during this time, the police officers were reaching for their sidearms, and one of them succeeded in firing four shots at the fleeing defendant; Vaiza was not wounded, but the officer hit two neighboring automobiles. Afterwards, the police searched the neighborhood, but were unable to find either the defendant or the pistol which had been momentarily in his hand.

In passing on the appeal, we must consider whether:

1) the court was in error in failing to instruct the jury on its own motion as to the alleged lesser-included offense of violating Penal Code section 241;

2) the court committed prejudicial error by receiving in evidence a lethal weapon introduced by the prosecution because of its alleged partial resemblance to the object pointed by the defendant at Officer Shierts;

3) the trial court was guilty of harmful error by receiving into evidence photographs of the scene and its lighting conditions, without requiring adequate proof of foundation; and

4) the attempt of the prosecution to prove the gun was loaded was insufficient.

█ Appellant argues that the court on its own motion should have given an instruction that the jury could bring in a verdict of guilty of simple assault on a police officer. He points out that the maximum penalty for assault of a police officer with a deadly weapon is 15 years (Pen. Code, § 245, subd. (b)), and that the maximum penalty for simple assault on a police officer is two years (Pen. Code, § 241). █ He further properly insists that it is the duty of the court in a criminal trial to instruct a jury upon every material issue as to which there is any evidence, even though such evidence is of a character not likely to inspire belief. (*People* v. *Roth,* 228 Cal.App.2d 522, 527 [39 Cal.Rptr. 582]; *People* v. *Lewis,* 186 Cal.App.2d 585, 597 [9 Cal.Rptr. 263].) █ We cannot accede to the claim of the defendant relative to instructions; if, as he contended, he used only a toy gun and did not intend to employ it as a club, but merely threatened to shoot with an imitation weapon, which obviously was not loaded and which could not eject a missile, he would not have had the means to cause harm to the person whom he threatened. Section 240 of the Penal Code defines assault as follows: ''An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.''

█ If a person threatens to shoot another with a toy gun,

or, let us say, with a chocolate candy pistol, there is no ability to commit a violent or any injury with it on the person of another. (*People* v. *Wells*, 145 Cal. 138, 140 [78 P. 470]; *People* v. *Aranda*, 63 Cal.2d 518, 532, 533 [47 Cal.Rptr. 353, 407 P.2d 265]; 79 A.L.R.2d 1415.)  We conclude that the defendant was either guilty of assault with a deadly weapon upon a peace officer, or of nothing.

 "A deadly weapon is one likely to produce death or great bodily injury" (*People* v. *Mortensen*, 210 Cal.App.2d 575 [26 Cal.Rptr. 746]; *People* v. *Morlock*, 46 Cal.2d 141 [292 P.2d 897]). A revolver with a cartridge in it is undoubtedly a deadly weapon. But a toy gun that is not used as a club is not a deadly weapon.  It was not error for the court to fail to instruct as contended by appellant.

 We think, however, that the case was not fairly tried. The first error was the admission in evidence of an undoubtedly lethal revolver on the spurious ground that in some details it appeared to be similar to the object which the defendant held in his hand when he threatened the police.

The principal issue to be determined by the finders of fact was whether the policeman had been faced with a real, loaded revolver or only with a toy, which could not shoot and thus cause death or great bodily injury. The police saw what the defendant held in his hand for only a small space of time, in poor light, and even so the testimony with respect to the pistol specified more differences between the object seen by the police and the exhibit admitted in evidence than it showed correspondences. Officer Shierts testified that the revolver introduced in evidence at the trial was much darker than the object that was exhibited by the defendant in September; that the gun at the trial had a smaller barrel at the tip; that the gun at the trial had a sight when Officer Shierts picked it out of stored weapons, but that the object used in September had no sight. At the time of the trial, the sight on the exhibit had been taken off. The officer testified that the size of the bore appeared to be the same on both guns. He thought the pistol at the trial had a longer handle than the gun which he saw. He did not see a trigger guard nor a hammer on the gun in September. He testified that he viewed the object pointed at him by the defendant for only about a second; that it was 18 inches or a foot from his face, and that he was looking directly at the bore. In September, he did not have the impression that the barrel had been sawed off, but later, after he thought about it, he concluded that it must have been because there was no

front sight on it. The police officer did not hear the gun cock; he heard no metallic sound at all; the pistol was not snapped; it was not nickel plated; there was nothing about the object that he saw by which he could form a conclusion as to its make, and he does not know of any company which manufactures a weapon like it; he had been in police work for 10 years and professionally had observed and studied many weapons, but he had never before seen that kind of gun. He testified that there was no shininess about it; it had a rather dull appearance; it was very small; on each side of the barrel he saw a portion that he thought was a cylinder, indicating it was a revolver; he had thought that maybe it had been a toy, but concluded otherwise; he did not know whether it was loaded. It is established, of course, that the defendant did not fire, even though he had the "drop" on the policemen.

It is true that, under proper circumstances, a pistol can be admitted in evidence for the limited purpose of illustration (Fricke, California Criminal Evidence (6th ed.) pp. 164-165), and the court stated that it so received it here; but, in the instant case, the essential question was not what make of gun it was, or its bore, or the type of weapon, after proof that a real pistol had been used; the question to be answered by the jury was whether the object in the hand of the defendant was really a deadly weapon. In such circumstances, the admission in evidence of a pistol which was clearly designed to shoot and, which, therefore, could kill or injure, was most unfair to the defendant, particularly as the jurors could take this exhibit with them into the jury room. In our opinion, there was a failure to lay a proper foundation for the introduction of the pistol even for illustrative purposes. (32 C.J.S., Evidence, § 583, p. 712.) What, after all, did it illustrate? That the object seen by the officer in the hand of the defendant was not in many particulars similar to the lethal weapon which was received in evidence.

█ The Attorney General maintains that there was no actual objection to the receipt of the weapon in evidence, but we feel that this is a too technical and doubtful discrimination. The record shows that, in fact, there was an objection by the assistant public defender to the receipt of the gun, and that while he indicated that he would later make a more comprehensive objection he failed to do so. We feel that the record, as a whole, sufficiently preserves the point on the appeal.

█ The error was exacerbated by the receipt in evidence of four pictures, People's exhibits 1, 3, 4, and 5, designed to

show lighting conditions at the scene of the crime. The photographs were taken at approximately 7:30 o'clock in the evening many months after the event, whereas the lighting conditions which prevailed at the time of the alleged crime were those in effect in a residential area at 2 o'clock on an early Monday morning. At 7:30 p.m., most people are at home with residential lights blazing, cars moving about with headlights on, and porch lights in evidence; the lighting is not the same in an area of this kind at 2 o'clock in the morning. Officer Shierts frankly testified that the purpose of these photographs was to indicate lighting conditions at the time of the alleged crime.

The assistant public defender objected to the receipt in evidence of the pictures on the ground that it had not been established that there was a light in the location to which he pointed in the upper right-hand corner of the first photograph on September 28, nor could the witness testify that there were lights where lights appear in the windows and doorways of the apartment building down the length of the structure, in either the upper or lower levels, nor could he testify that the light at the upper left-hand corner was in operation at 2 o'clock in the morning on September 28. When four of the pictures were offered *solely* to show the lighting conditions at the time of the crime, it was incumbent upon the prosecution to lay a proper foundation at least by having the pictures taken at the same hour of the morning as the incident. A ruling on the adequacy of a foundation for the admission of evidence is, generally speaking, within the discretion of the trial court (*People* v. *Robbins,* 225 Cal.App.2d 177 [37 Cal.Rptr. 244]) ; however, in this case, it seems clear to us that the court abused its discretion. (Witkin, Cal. Evidence (1958) Demonstrative, Experimental and Scientific Evidence, § 314 (2), p. 353; 20 Am.Jur., Evidence, § 731, p. 611.)

A consideration of the next error must be bifurcated. The Attorney General, in his brief, maintains that an admission secured from the defendant several months afterwards in the hospital proves, inferentially, that the pistol used by defendant at the scene of the crime was loaded. Counsel for the defendant points out that the only evidence on the subject was taken on *voir dire* in the absence of the jury and that it, therefore, cannot be considered. In any event, upon retrial the question of its admissibility will doubtless arise, and it is our duty to analyze the offer.

Several months after the alleged criminal event, Officer

Wallace saw defendant lying wounded on the sidewalk at 18th and "K" Streets; he had been shot by another officer; Wallace believed that he was the defendant and notified Officer Shierts. Officers Shierts and Wallace went to see the prisoner at the county hospital, and immediately recognized Vaiza lying in bed and talked with him there. During the course of the conversation, Officer Shierts asked, "Why didn't you shoot me?" And the defendant replied, "What do you think I am, a killer?" This statement was characterized by the People as a damaging admission to the effect that the defendant had used a lethal weapon and that it was loaded. The record shows that Vaiza had not been fully informed of his rights under the rule expounded in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal. Rptr. 169, 398 P.2d 361], *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and *Miranda* v. *Arizona,* 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694]. While the defendant's reply was not an explicit confession, and under one interpretation at least, was not even a damaging statement, the possible inferential meaning relied upon by the prosecution was incriminating and prejudicial, namely, that the defendant, in fact, had threatened the police with a loaded gun. (*People* v. *Anderson,* 63 Cal.2d 351, 362 [46 Cal.Rptr. 763, 406 P.2d 43].)

The "admission" made by defendant, considered in the aspect advocated by the Attorney General, was equivalent to an inferential statement that the object pointed at the policemen by the defendant was indeed a lethal weapon, that it was loaded, and that by pressing the trigger he could have killed or wounded one or more of them. Counsel for the People conclude that this remark carried the plain implication that the gun was loaded, for he says it is difficult to see why appellant "by squeezing the trigger of an unloaded gun could become a killer." At the same time this alleged admission was made, the defendant was in custody; the object of the interview was to secure incriminating statements, and there was an admitted failure to comply with the constitutional requirements insisted upon in the *Dorado, Escobedo,* and *Miranda* cases, *supra.*

*People* v. *Marbury,* 63 Cal.2d 574, 577 [47 Cal.Rptr. 491, 407 P.2d 667], holds that when a defendant makes a confession while under arrest as a suspect for another crime, the questioning comes within the *Dorado* rule; it seems clear, therefore, that as this particular police officer was carrying out a process of interrogation that lent itself to eliciting incriminating statements, the *Dorado* rule would apply. Of course,

this did not result in an explicit confession. But the prosecution employs the quotation in a fashion to give it the quality of an incriminating statement equivalent to an admission of possession and use of a loaded weapon, and it should not be admitted in evidence.

If the foregoing portion of the record occurred outside of the hearing of the jury, there is no substantial evidence to show that the pistol, even if real, was loaded. And the necessary proof failed in this additional particular. (*People* v. *Sylva,* 143 Cal. 62 [76 P. 814]; *People* v. *Montgomery,* 15 Cal.App. 315 [114 P. 792]; *People* v. *Bennett,* 37 Cal.App. 324 [173 P. 1004]; *People* v. *Simpson,* 134 Cal.App. 646 [25 P.2d 1008]; 5 Cal.Jur.2d, Assault and Battery, § 7, pp. 226-227.)

Considering the main issue in this case, that is to say, whether the object exhibited by the defendant was in fact a real pistol or only a toy, we reach the conclusion that the trial as actually conducted was unfair. Incidentally, the defendant admitted that he had stolen a number of articles including a wallet and, according to him, the toy pistol, from automobiles parked along the street. This admission could do the defendant no good, nor could the fact that he was later wounded by another policeman in a public street. But he was not being tried for theft and only for the crime charged in the information. If he did not threaten the police with a real pistol, he was entitled to a not guilty verdict; the receipt in evidence of a lethal weapon, the improper proof of lighting conditions, and the failure to prove that the pistol was loaded lead inevitably to our conclusion that he was not tried fairly.

The judgment is reversed.

Stone, J., and McMurray, J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.