[Crim. No. 27459. Second Dist., Div. Four. May 17, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
RASTUS LEE HENDERSON, Defendant and Appellant.

## COUNSEL

Cornell R. Young for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Donald J. Oeser and Penina S. Van Gelder, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JEFFERSON (Bernard), J.**—In count I of an information defendant was charged with an assault with a deadly weapon upon Dallas L. Barnes, a peace officer, in violation of Penal Code section 245, subdivision (b).[1] In count II defendant was charged with the commission of the same offense upon Roger L. Gripe, a peace officer. It was further alleged that, at the time of the commission of each offense, defendant used a firearm, to-wit, a revolver. Defendant was found guilty of each offense by a jury and the allegations as to the use of a firearm were found to be true. Defendant's

---

[1]Penal Code section 245, subdivision (b), provides, in pertinent part, that "[e]very person who commits an assault with a deadly weapon or instrument . . . upon the person of a peace officer . . . , and who knows or reasonably should know that such victim is a peace officer . . . engaged in the performance of his duties, when such peace officer . . . is engaged in the performance of his duties shall be punished . . . ."

motion for a new trial was denied, proceedings were suspended and defendant was placed on probation subject to various terms and conditions. Defendant appeals from the judgment of conviction (order granting probation under Pen. Code, § 1237).[2]

On April 12, 1973, defendant was residing at 920 West 71st Street in Los Angeles. On this date, at approximately 7 a.m., eight police officers went to the vicinity of this residence. The officers were under the command of Officer Richard Ortiz. Approximately six days prior to April 12, 1973, Officer Ortiz had secured from a magistrate a search warrant authorizing the search of defendant's residence for the presence of heroin. The search warrant specifically excused compliance by the police with Penal Code section 1531.[3]

Between 7 a.m. and 9 a.m., the police-officer detail had the residence under surveillance but observed no activity within the residence nor any person enter or leave it. The plan of operation decided upon was that, at 9 a.m., the officers would effect entry from all doors simultaneously, without knocking. The entry was to be effected by knocking the doors down.

Officer Ortiz and another officer stationed themselves at a dining room door while Officers Barnes and Gripe stationed themselves at the rear door of the premises. The testimony of the officers was that they yelled "police officers" practically simultaneously with kicking in the doors to effectuate a break-in entry.

Officers Barnes and Gripe succeeded in breaking the rear door and found themselves in a den which was sealed off from the rest of the house with walls and a locked door. Two shots were fired from the inside of the premises before Officers Barnes and Gripe succeeded in breaking the den door. One shot came through the den wall. Officer Gripe testified that he heard a woman and child screaming from a room other than the den before he heard the shots.

---

[2]Defendant purports to appeal from the denial of his motion for new trial. Under Penal Code section 1237, an order denying a motion for a new trial is made reviewable upon appeal from a final judgment but is not itself an appealable order. Hence, we dismiss the purported appeal from the order denying the motion for a new trial.

[3]Penal Code section 1531 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."

Defendant's wife and child were found in the master bedroom and defendant was found in the bathroom with a gun in his hand. It was established that the two shots had come from the gun held by defendant.

Officer Gripe testified that, when confronted in the bathroom, defendant had on a T-shirt and a pair of trousers. Officer Mikkelson, who made entry from the front door, testified that he went to the bathroom and found defendant in custody of Officer Gripe and that defendant was wearing a T-shirt and underwear shorts—not a pair of trousers. Officer Mikkelson also testified that, before breaking the front door to gain admittance, he announced: "Police officers. Open the door"; that he heard officers at the side and rear entrances announcing "police officers" simultaneously with the breaking to gain entry.

Mrs. Carmella Rodriguez testified that she lived two houses away from defendant's residence and that on the morning in question she was in her yard around 9 a.m. and heard the words, "This is the police—Open up"; that she then ran into her house and, from the inside of her house, heard the same words again and the crash of glass and wood breaking. She estimated that a few minutes elapsed between the demand for entry that she heard and the sound of breaking glass and wood.

Defendant testified in his own defense and admitted firing the first shot intentionally but stated that the second shot went off by accident. Defendant testified that he was asleep and was awakened by his wife indicating that someone was breaking into the house. Defendant denied hearing anyone announce that they were police officers and testified that he had no reason to believe that the breaking was by police when he fired to scare the intruders away.

Defendant made a pretrial motion to suppress evidence under Penal Code section 1538.5. This motion was denied. Defendant's motions for acquittal under Penal Code section 1118.1, made at the conclusion of the prosecution's presentation of evidence and again after both sides had rested, were denied by the trial judge.

As one ground for reversal, defendant claims error in the issuance by the magistrate of a search warrant containing a "no-knock" provision. Defendant relies upon *Parsley* v. *Superior Court* (1973) 9 Cal.3d 934 [109 Cal.Rptr. 563, 513 P.2d 611], which held that magistrates are without power to give prior authorization in a search warrant for a

police officer to violate Penal Code section 1531 by effecting a forcible entry without prior notice to the occupant of his authority and purpose, and a refusal of admittance from the occupant, and that the prosecution may not rely on such advance excusal to justify the officers' failure to comply with section 1531.

The prosecution points out that *Parsley* was decided subsequent to the dates of issuance and execution of the warrant in the case at bench, and can have no effect unless it be given retroactive application. There appears to be no case law indicating whether or not *Parsley* is to be given a retroactive application. Although *Parsley* was decided on August 28, 1973, the search warrant in that case was executed on March 17, 1972. Since the judicial authorization for noncompliance with Penal Code section 1531, declared illegal in *Parsley,* occurred more than a year prior to the judicial authorization involved in the case at bench, we consider that notions of fairness dictate that *Parsley* be made applicable to the judicial authorization issued in the case at bench in April 1973. We hold, therefore, that failure of the officers to comply with Penal Code section 1531 cannot be predicated on judicial authorization contained in the search warrant.

The prosecution contends that, even if *Parsley* is interpreted to render the "no-knock" provisions of the search warrant invalid in the case at bench, the error is harmless because the officers were entitled to make a no-knock entry under the exception set forth in *Parsley*. It is defendant's position that the police officers' break-in entry did not satisfy the requirements of the exception for an unannounced entry and, therefore, that such officers were not "engaged in the performance of [their] duties" under Penal Code section 245, subdivision (b)—which precludes defendant's conviction under that section.

The *Parsley* court stated "that failure to comply with sections 1531 and 844 does not compel application of the exclusionary rule 'if the specific facts known to the officer before his entry are sufficient to support his good faith belief that compliance will increase his peril, frustrate the arrest, or permit the destruction of evidence.' [Citations.]" (*Parsley, supra,* 9 Cal.3d 934, at p. 938.) Further elaboration upon the exception is found in *People* v. *Dumas* (1973) 9 Cal.3d 871 [109 Cal.Rptr. 304, 512 P.2d 1208]. *Dumas* points out that, in the typical case, the police officer discovers the facts that justify immediate entry only *after* approaching the premises. (See *People* v. *Maddox* (1956) 46 Cal.2d 301 [294 P.2d 6]

and *People* v. *Tribble* (1971) 4 Cal.3d 826 [94 Cal.Rptr. 613, 484 P.2d 589].) *Dumas,* however, also points out that, in some exceptional circumstances, unannounced entry into a defendant's premises has been upheld on the basis of information received by the officers prior to the arrival at the scene of the entry. (See *People* v. *Smith* (1966) 63 Cal.2d 779 [48 Cal.Rptr. 382, 409 P.2d 222] (officers had cause to believe that the persons sought were armed and had previously shot police officers); *People* v. *Hammond* (1960) 54 Cal.2d 846 [9 Cal.Rptr. 233, 357 P.2d 289] (officers had prior information that defendant was presently armed and under the influence of heroin).)

"Police knowledge of the existence of a firearm excuses compliance with announcement requirements only where the officers reasonably believe the weapon will be used against them if they proceed with the ordinary announcements. [Citations.] This belief must be based on specific facts and not on broad, unsupported presumptions." (*Dumas, supra,* 9 Cal.3d 871, at pp. 878-879.)

In *Dumas,* the police officer in charge of the search had obtained reliable information from a confidential informant that defendant possessed several firearms in his apartment and that he invariably answered the door with a loaded gun in his hand. The *Dumas* court concluded that the police officers making the search in *Dumas* "could reasonably infer from this activity that a substantial possibility existed [defendant] would employ deadly force in order to prevent his apprehension. . . . They [the searching officers] could therefore reasonably conclude at the time of entry that they were faced with an emergency and that compliance with the announcement requirements would substantially increase their peril. On these facts we hold that the officers' failure to comply with section 1531 does not give rise to an application of the exclusionary rule." (*Dumas, supra,* 9 Cal.3d 871, at p. 879.)

█  In the case at bench, the prosecution asserts that the facts known to the police officers are substantially similar to the situation presented in *Dumas.* In *Dumas* the facts were obtained by the police officers from a reliable informant. In the case at bench the facts about defendant were obtained from arrest reports which were read by Officer Ortiz. Defendant's arrest record indicated the use of firearms by defendant. Although the arrest records did not reveal the disposition of each case and Officer Ortiz testified that he did not make a determination of the disposition of each case, the question presented is whether these facts sufficiently justified the officers in believing that compliance with Penal Code section

1531 would increase their peril, frustrate the arrest of defendant or permit the destruction of evidence. In addition to the arrest record indicating assaultive behavior by defendant in the past, the record indicated a prior altercation with a police officer because of defendant's carrying of a firearm and also that at a time of defendant's previous narcotic arrest he had attempted to dispose of the contraband.

We hold that the facts known to the officers at the time of the break-in entry were sufficient to bring the officers within the no-knock exception set forth in *Parsley* and *Dumas* and that the trial court's denial of defendant's pretrial suppression-of-evidence motion, made under Penal Code section 1538.5, was proper.

This leads us to a consideration of defendant's contention that, nevertheless, he was entitled to a jury determination of whether Officer Barnes, the alleged victim in count I of the information, or Officer Gripe, the alleged victim in count II of the information, was "engaged in the performance of his duties" as required for defendant's conviction under Penal Code section 245, subdivision (b). Both the prosecution and defendant rely upon the same authorities as being definitive with respect to the validity of this contention of defendant. These authorities are the cases of *People* v. *Curtis* (1969) 70 Cal.2d 347 [74 Cal.Rptr. 713, 450 P.2d 33]; *People* v. *Muniz* (1970) 4 Cal.App.3d 562 [84 Cal.Rptr. 501]; and *People* v. *Jones* (1970) 8 Cal.App.3d 710 [87 Cal.Rptr. 625].

*Curtis, Jones* and *Muniz* deal with the principles of law that govern the rights of a defendant to use varying degrees of force against a police officer depending upon whether the officer's arrest of defendant is lawful or unlawful. These cases establish that, by virtue of Penal Code section 834a, resistance to an *unlawful* arrest constitutes the misdemeanor offense of a battery under Penal Code section 243 because the victim officer is *not* "engaged in the performance of his duties." "[W]e must construe section 243, like section 148, as excluding unlawful arrests from its definition of 'duty.' " (*Curtis, supra,* 70 Cal.2d 347, at p. 355.) "An officer is under no duty to make an unlawful arrest." (*Jackson* v. *Superior Court* (1950) 98 Cal.App.2d 183, 189 [219 P.2d 879].) If, however, the officer is making a *lawful* arrest, a defendant's resistance becomes a felony under Penal Code section 243.

But these principles are qualified by "the rule allowing resistance to excessive force, which applies during a technically lawful *or* unlawful

arrest," and which "protects a person's right to bodily integrity and permits resort to self-defense." (*Curtis, supra,* 70 Cal.2d 347, at p. 356.) (Italics in original.)

The *Curtis* case indicates that the principles of interpretation of Penal Code sections 834a and 243 are equally applicable to Penal Code section 245, subdivisions (a) and (b), the latter subdivision being the subject of the charge against defendant in the instant case. "The same rationale regarding increase of penalties applies to interpretation of Penal Code section 245, subdivision (b), enacted at the same time as the second sentence of section 243. However, in section 245, subdivision (b), the increase provided was not from a misdemeanor to a felony, but from the felony of assault with a deadly weapon to the more serious felony of assault with a deadly weapon upon a peace officer 'engaged in the performance of his duties.' Thus if the peace officer was acting unlawfully, only the lesser penalty would apply (§ 245, subd. (a))." (*Curtis, supra,* 70 Cal.2d 347, at pp. 357-358, fn. 9.)

The cases of *Curtis, Jones,* and *Muniz* all dealt with situations in which the validity or invalidity of an arrest or detention of a suspect was involved. That is not the situation involved in the case at bench. Here, we are concerned with the validity or invalidity of the service of a search warrant. ■ Do the legal principles applicable to an arrest, as set forth herein, apply to a search of premises? We hold that they do.

With apparent approval, *Curtis* refers to a federal case involving a defendant who was charged with resisting an officer who was attempting to execute a search warrant. "In the recent case of *United States* v. *Dentice* (E.D.Wis. 1968) 289 F.Supp. 799, the defendant was charged with resisting an officer 'engaged in the performance of his official duties' when the officer attempted to execute a search warrant. The court emphasized that the validity of the warrant was crucial to a conviction because 'the statute making it a crime to resist an officer in the performance of his official duties [requires] that the officer *in fact* be acting in an official capacity—i.e., pursuant to valid authority . . . .' (*Id.,* at p. 800; cf. *Landry* v. *Daley* (N.D.Ill. 1968) 280 F.Supp. 938, 959-960.) A similar rule prevails in most jurisdictions. [Citations.]" (*Curtis, supra,* 70 Cal.2d 347, at p. 354, fn. 4.) (Italics in original.)

■ Having determined in the case at bench that the search warrant could not be served without announcement of authority and purpose

(Pen. Code, § 1531) on the basis of prior judicial authorization, we must next consider whether the officers were acting under the *Parsley* and *Dumas* exception to bring them within the terms of Penal Code section 245, subdivision (b), of "being engaged in the performance of [their] duties."

The trial court gave the following instruction to the jury: "A peace officer is lawfully engaged in the performance of his duties if he is attempting to effect service of a search warrant, signed by a magistrate, valid on its face, which authorizes the search of certain premises or places, or the search of certain persons." The giving of this instruction was error in light of our holding that *Parsley* is applicable to void the "no-knock" provisions of the search warrant. The quoted instruction had the effect of taking from the jury the issue of whether, in the service of the search warrant, the officers were engaged in the performance of their duties. They could be so engaged only if the facts brought them within the "no-knock" exception as defined in *Parsley* and *Dumas.* This is a factual issue that must be submitted to the jury for its determination, since the determination of this issue is crucial to the distinction between the offense of an assault with a deadly weapon (Pen. Code, § 245, subd. (a)) and the offense of an assault with a deadly weapon upon a peace officer "engaged in the performance of his duties." (Pen. Code, § 245, subd. (b).)

Although there does not appear to be any decisional authority on this point, the cases that have been decided in connection with the difference between the misdemeanor offense of a battery (Pen. Code, § 242) and the felony offense of a battery upon a peace officer (Pen. Code, § 243) constitute persuasive authority with respect to the factual issues that must be submitted to the jury for determination. Thus, in *People* v. *Jones* (1970) 8 Cal.App.3d 710, 716 [87 Cal.Rptr. 625], it is pointed out that, with respect to Penal Code section 243, "[t]he corpus delicti of the crimes charged includes not only the normal elements of battery but also the fact of the status of the victims at the time of the crime." In referring to the effect of *People* v. *Curtis* (1969) 70 Cal.2d 347 [74 Cal.Rptr. 713, 450 P.2d 33], *Jones* stated: "The court there held that the portion of Penal Code section 243 which raises a battery from misdemeanor to felony status where the victim is a peace officer engaged in the performance of his duty, does not come into play where the officer makes an illegal arrest because 'an officer is under no duty to make an unlawful arrest.' Hence, 'where . . . there is a question of the applicability of the *Curtis* rule, the legality of the arrest becomes an essential part of the corpus delicti and

*any factual conflict must be resolved by the jury.'* [Citations.]" *(Jones, supra,* 8 Cal.App.3d 710, at p. 716.) (Italics added.) "Thus, whether the peace officer was actually engaged in the performance of his duties is not an evidentiary question or a question of law to be resolved by the trial judge. Rather, it is a question of fact and an essential part of the corpus delicti itself." *(People* v. *Soto* (1969) 276 Cal.App.2d 81, 86-87 [80 Cal.Rptr. 627]; accord., *People* v. *Muniz* (1970) 4 Cal.App.3d 562 [84 Cal.Rptr. 501].)

In the case at bench, therefore, a part of the corpus delicti of the felony defined in Penal Code section 245, subdivision (b), is the fact that the police officer who is assaulted with a deadly weapon is engaged in the performance of his duties. This element of the offense must be submitted to the jury under appropriate instructions so that the offense defined by Penal Code section 245, subdivision (b), may be differentiated from the felony defined by Penal Code section 245, subdivision (a), which carries a lighter sentence. This the trial judge did not do.

The error in the failure of the trial judge to instruct the jury on this corpus delicti element of the offense created by Penal Code section 245, subdivision (b), was compounded with the fact that, in his argument to the jury, the prosecutor stated that the judge had determined the propriety of the police action in the entry into defendant's home. The trial judge ruled that the remark was prejudicial and out of order, and sustained an objection made by defense counsel out of the presence of the jury. The defendant requested that the jury be admonished, but the record does not reflect any admonition being given by the trial judge. Hence the prejudicial statement remained before the jury. That these errors constitute prejudicial errors requiring a reversal of the judgment of conviction is scarcely open to question.

Nevertheless, we consider another contention made by defendant.

Over defense objection, the trial court permitted the prosecutor to cross-examine defendant about his possession of a second gun, to-wit, a loaded Derringer that was found in the pocket of a pair of defendant's trousers located in the master bedroom. There is no contention that the loaded Derringer was used by the defendant in connection with the charged offense. The prosecution argued that defendant's possession of two loaded guns in his home was relevant to the question of defendant's intent with respect to the charged offense.

Prior to this cross-examination of defendant, Officer Barnes had testified on direct examination, as a part of the prosecution's case in chief, that upon his entry into the master bedroom, defendant's wife was struggling with the pocket of a pair of man's trousers; that he subsequently recovered the trousers she dropped to the floor and removed from a pocket thereof a .22 caliber loaded Derringer gun. This evidence of what defendant's wife was doing and of Officer Barnes' recovery of the gun had no relevancy with respect to the two offenses charged against defendant. Defense counsel should have objected to this testimony of Officer Barnes on the grounds of irrelevancy.

■ But defendant did object to the cross-examination of defendant about the Derringer gun and to its receipt in evidence. The specific question asked on cross-examination of defendant was whether he was aware that a loaded Derringer was in his pair of trousers located in the bedroom. Defendant answered "no" to this question. The objections should have been sustained by the trial court. Neither logic, experience, precedent nor common sense supports the proposition that, from the possession in one's home of two loaded guns, a reasonable inference may be drawn that the possessor has an intent to commit the crime of an assault with a deadly weapon. Evidence of possession of a weapon not used in the crime charged against a defendant leads logically only to an inference that defendant is the kind of person who surrounds himself with deadly weapons—a fact of *no relevant* consequence to determination of the guilt or innocence of the defendant. (*People* v. *Riser* (1956) 47 Cal.2d 566, 577 [305 P.2d 1]; *People* v. *Vaiza* (1966) 244 Cal.App.2d 121, 125 [52 Cal.Rptr. 733]; cf. *People* v. *DeVaney* (1973) 33 Cal.App.3d 630, 635 [109 Cal.Rptr. 276] (admissibility of nonrelevant tools of a crime found in defendant's possession waived by defendant's failure to object).)

The claimed relevance of the loaded Derringer gun on the issue of defendant's intent is without substance. The inference sought by the prosecution is purely one of *sheer speculation*—the antithesis of relevancy. The admission into evidence of this irrelevant evidence—highly prejudicial in nature—also constitutes reversible error.

The judgment of conviction (order granting probation) is reversed.

Kingsley, Acting P. J., concurred.

**DUNN, J.**—I respectfully dissent.

The majority holds that *Parsley* v. *Superior Court* (1973) 9 Cal.3d 934 [109 Cal.Rptr. 563, 513 P.2d 611], an appeal from denial of a writ, should have been given retroactive effect. With that I disagree.

Here, the warrant was issued 6 April 1973 and was executed 12 April 1973. *Parsley* was not decided until 28 August 1973 and held that a magistrate may not, in advance, relieve police officers from the duty of complying with Penal Code section 1531. The majority here says that, because the warrant in the *Parsley* case was executed 17 March 1972, "notions of fairness" require that the *Parsley* decision of August 1973 be made retroactive. I do not agree that this is a valid reason. (See: *Desist* v. *United States* (1969) 394 U.S. 244 [22 L.Ed.2d 248, 89 S.Ct. 1030]; *Kaiser* v. *New York* (1969) 394 U.S. 280 [22 L.Ed.2d 274, 89 S.Ct. 1044].)

At the same time, *Parsley* recognizes exceptions "for articulated exigent circumstances" (p. 938 of *Parsley*). Here, Police Officer Ortiz testified at the hearing of defendant's 1538.5 motion as follows:

"Q  By Mr. Abouaf [prosecutor]: What was your state of mind when you went to that location [defendant's house] to execute the search warrant?

"A  It was the same as when I requested noncompliance with 1531 from the issuing magistrate for the two reasons I stated, the fear of destruction of evidence and the safety of the officers involved serving the warrant."

I agree with the majority that the facts known to the police officers at the time they broke into defendant's house were sufficient to constitute exigent circumstances. However, under such factual situation, whether the officers were actually engaged in making a valid arrest, i.e.: "performance of his duties" (Pen. Code, § 245, subd. (b)), did not pose a jury question, for the reason that such determination was made as a matter of law at the 1538.5 hearing. Thus, I find no error in the trial court's having instructed the jury that: "A peace officer is lawfully engaged in the performance of his duties if he is attempting to effect service of a search warrant, signed by a magistrate, valid on its face, which authorizes the search of certain premises or places, or the search of certain persons."

Regarding the trial court's admission of evidence of a derringer pistol found in the pocket of defendant's pants (a point not raised in appellant's brief), I would conclude the evidence was possibly admissible (see: *People* v. *Dumas* (1973) 9 Cal.3d 871, 877 [109 Cal.Rptr. 304, 512 P.2d 1208] and the evidence was not so prejudicial as to warrant reversal.

Furthermore, defendant contends that his conditions of probation are invalid, particularly the (standard) condition requiring the probationer to submit to search or seizure. His argument is not persuasive. Defendant argues that blanket search provisions have no relationship to his conviction for assault with a deadly weapon (upon a peace officer) in view of the many articles which the law has permitted to be classified as "deadly." However, since the majority does not discuss this point (instead, choosing to reverse the judgment on other grounds) I cannot state whether I will agree or will disagree with it. For that reason, my dissent makes no further commentary upon defendant's contention.

Respondent's petition for a hearing by the Supreme Court was denied July 28, 1976. Clark, J., was of the opinion that the petition should be granted.