[Crim. No. 9157.   In Bank.   Nov. 19, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN T. MAR-
BURY and GEORGE HORN, Defendants and Appel-
lants.

Milton L. McGhee and Harry A. Ackley, under appointment by the Supreme Court, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, Raymond M. Momboisse and John L. Giordano, Deputy Attorneys General, for Plaintiff and Respondent.

TRAYNOR, C. J.—Defendants appeal from judgments of conviction entered upon jury verdicts finding them guilty of second degree robbery (Pen. Code, §§ 211, 211a) and first degree murder and fixing the penalty for the murder at life imprisonment (Pen. Code, §§ 187, 189, 190, 190.1).

About 5:45 p.m. on January 24, 1964, Willie Reed saw defendants John Marbury, with whom he was acquainted, and George Horn at the Stag Pool Hall at 3d and J Streets in Sacramento. Reed left the pool hall shortly before 6 p.m., and as he walked along 4th Street, he heard footsteps. Turning, he recognized Marbury as one of two men walking behind him. Believing that he might be robbed, he quickened his pace, and so did Marbury and the other man. Reed passed Mrs. Itsu Matsuo, an elderly woman, who was walking in the opposite direction. When Reed reached the corner, he crossed the street and looked back. He saw Marbury either push or strike Mrs. Matsuo, who fell to the pavement. Marbury took her handbag and walked off rapidly with the second man, who had been standing nearby. When the men reached the corner of 4th and O Streets, Reed saw that the second man was Horn.

Shortly before 6 p.m. of the same day, Frank Williams, a storekeeper, was walking along 3d Street. A man, whom Williams later identified as Horn, passed by and whistled twice. Williams looked back and saw a man approaching, whom he later identified as Marbury. Marbury attacked and knocked him down. During the fight Williams, while preventing the seizure of his wallet, was able to take a knife from his pocket, open it, and slash his attacker. A passing motorist, Cole Younger, stopped the fight and later identified Mar-

bury as the assailant. Younger stated that Horn came up to him after the fight and asked what had happened.[1]

That night Mrs. Matsuo died from brain damage caused by the striking of her head with great force against a solid stationary object. The same night, Marbury went to the emergency hospital for treatment and stated that he had been attacked by three Mexicans. The following morning, Mrs. Matsuo's handbag was found empty behind bushes on the corner of 4th and O Streets.

On January 22, two days before Mrs. Matsuo was attacked, Deputy Sheriff Balshor of Sacramento County talked with Marbury about an armed robbery and then released him. On Friday, January 25, Deputy Sheriff Balshor requested the Sacramento Police Department to arrest Marbury for the armed robbery. Marbury was interrogated on Friday and Saturday regarding that robbery. On Saturday at about 7 p.m. Detective Stanley of the Sacramento Police Department joined an interrogation session already in progress and began questioning Marbury about the attacks on Mrs. Matsuo and Williams. Officer Stanley told Marbury of the evidence that they had against him concerning these crimes. According to both officers, Marbury confessed after approximately 15 or 20 minutes of interrogation. A deputy district attorney and a court reporter were then summoned, and Marbury repeated his confession in substantially more detail.

Both confessions were admitted into evidence. Marbury stated in his confessions that he and Horn had been at the Stag Pool Hall and that they had decided, at Horn's suggestion, to ''roll a drunk.'' Marbury tried to grab Mrs. Matsuo's purse, and in resisting she fell to the sidewalk. Horn ran ahead during the encounter but ''stopped on the corner and put his hands in his pockets'' and Marbury ''took it for granted then that he was acting as a lookout man.'' Marbury took the coin purse before throwing Mrs. Matsuo's handbag into the shrubs. He did not attempt to rob Williams but instead was attacked by him. On Monday, January 28, Marbury took the police officers to the scenes of the two incidents and pointed out where the various acts occurred.

Jesse Chavez, a 15-year-old boy, testified for Marbury and stated that on January 24 about 6 p.m. when he was walking on 4th Street, he heard a thump. Looking up, he saw Mrs. Matsuo lying on the pavement and defendant Horn grabbing

---

[1]Both Marbury and Horn were acquitted by the jury on charges of attempted robbery of Williams.

her purse. Another man was apparently standing by, but he was not defendant Marbury.[2]

Marbury contends that the court erred in admitting his confessions into evidence. ▮ Confessions are not admissible if they were obtained when "(1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed defendant of his right to counsel or of his absolute right to remain silent, and no evidence establishes that he had waived these rights." (*People* v. *Dorado,* 62 Cal.2d 338, 353-354 [42 Cal.Rptr. 169, 398 P.2d 361]; *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977].)

▮ When Marbury gave both confessions he was in custody and the investigation had focused on him as the assailant of Mrs. Matsuo and Williams. There is no evidence that he was informed of his constitutional rights or waived them. Officer Stanley elicited a confession after confronting defendant with the evidence against him. The Attorney General contends, however, that since Marbury was arrested and in custody as a suspect for another crime, the questioning with respect to the crimes against Mrs. Matsuo and Williams preceded the accusatory stage as to these crimes and was not a process of interrogation that lent itself to eliciting incriminating statements. There is no merit in this contention.

"The test . . . does not propose a determination of the actual intent or subjective purpose of the police in undertaking the interrogations but a determination based on the objective evidence. Whatever may be the subjective intent of the interrogators, we must, in order to determine if the police are carrying out 'a process of interrogations that lends itself to eliciting incriminating statements' (*Escobedo* v. *Illinois, supra,* at p. 491), analyze the total situation which envelops the questioning by considering such factors as the length of the interrogation, the place and time of the interrogation, the nature of the questions, the conduct of the police and all

---

[2]There was conflict in Chavez's testimony. On direct examination, he stated that only Horn was at the scene of the crime and ran by him. On cross-examination, he agreed that two men were there, but he continued to assert that Horn was the active participant and that Marbury was not the other man.

▮

other relevant circumstances." (*People* v. *Stewart,* 62 Cal.2d 571, 579 [43 Cal.Rptr. 201, 400 P.2d 97].)

In the present case, Marbury had been in custody for more than 24 hours during which time he was interrogated intermittently to elicit a confession of another crime. About 15 minutes before he first confessed to the instant charges, he was confronted with the evidence against him and accused of the crimes against Mrs. Matsuo and Williams. Although the focus of the questioning changed, the interrogation process continued. In view of the total situation presented it is clear that Officer Stanley was carrying out a process of interrogation that lent itself to eliciting incriminating statements. Accordingly, the judgment against Marbury must be reversed.

Defendant Horn contends that since Marbury's confessions implicated him, the error was also prejudicial as to him. In *People* v. *Aranda, ante,* pp. 518, 526 [47 Cal. Rptr. 353, 407 P.2d 265], we held that instructions that an erroneously admitted confession of one defendant implicating his codefendant should be considered only against the former did not cure the error as to the latter. We pointed out that "The giving of such instructions, however, and the fact that the confession is only an accusation against the nondeclarant and thus lacks the shattering impact of a self-incriminatory statement by him (see *People* v. *Parham,* 60 Cal.2d 378, 385 [33 Cal.Rptr. 497, 384 P.2d 1001]) preclude holding that the error of admitting the confession is always prejudicial to the nondeclarant."

In the present case, however, it is reasonably probable that a result more favorable to Horn would have been reached had Marbury's confession been excluded. The error therefore resulted in a miscarriage of justice. (Cal. Const., art. VI, § 4½; *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].) Through its witnesses, the prosecution was able to establish only that Horn was standing nearby and was doing nothing when Mrs. Matsuo was knocked down and robbed. Chavez, who identified Horn as the active participant, was impeached when the prosecutor stated in his summation that he did not believe the witness was lying, but only that he was "mistaken" and not "paying attention." There was no direct testimony to show that Horn actually aided and abetted Marbury in the crime. It was only when the confessions were introduced that the prosecution had an opportunity to identify Horn as the "instigator" and then as the "lookout man." In his argument to the jury, the prosecutor linked the cases of the two

defendants together and in effect urged Horn's conviction on the basis of Marbury's confession.[3]

The judgments are reversed.

Peters, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgments. I am of the opinion that it is not reasonably probable that a result more favorable to defendants would have been reached in the absence of the errors noted in the opinion of the majority. (See Cal. Const., art. VI, § 4½.)

---

[3]The prosecutor was careful to warn the jury that it was not to consider Marbury's confessions as evidence against Horn. In virtually the same breath, however, he read to the jury Marbury's statements that Horn approached him and suggested a robbery. The prosecutor also stated that Marbury's statement, which was ''their story,'' revealed that Horn ''was acting as a lookout man. When this happened, Mr. Horn was right there, a scuffle took place of a couple or three jerks, according to Mr. Marbury, and . . . he says that Mr. Horn ran and then put his hands in his pocket to act as a lookout man.'' Finally, the prosecutor stated that since defense counsel for Horn had referred to Marbury's confessions, ''I'm going to take it just one step further, and if you recall the confession by Mr. Marbury, he said sure, when this happened he [Horn] ran. He ran a short distance, put his hand in his pocket and acted as lookout. . . . I assume you remember that much. In fact, I read it to you again yesterday. Is that aiding or abetting? . . . I don't think that's a fair statement, that Mr. Marbury didn't implicate Mr. Horn at all, because I think this whole thing originated in the fact that Mr. Horn suggested it, according to Mr. Marbury; so I think Mr. Baldwin's statement that Mr. Marbury didn't indicate—I mean implicate him at all isn't quite fair. But referring to Mr. Marbury's statement, the whole thing is Mr. Horn's idea.'' In light of this summation, it is not likely that the jury was able to ignore Marbury's confession when it decided the question of defendant Horn's guilt or innocence.