Filed 5/16/23  P. v. Herring CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LEONARD BARNARD HERRING,<br><br>Defendant and Appellant. | F084088<br><br>(Super. Ct. No. BF180906A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.

Brad J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and Cameron M. Goodman, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

Defendant Leonard Barnard Herring appeals his convictions for voluntary manslaughter and assault with a deadly weapon, asserting the trial court erroneously admitted irrelevant and prejudicial evidence. Additionally, defendant argues the trial court erred in sentencing him due to its misinterpretation of recent changes to Penal Code section 1170, subdivision (b).[1] The judgment is affirmed.

# PROCEDURAL SUMMARY

On September 18, 2020, the Kern County District Attorney filed an information charging defendant with the murder of Denysha Langston (§ 187, subd. (a); count 1); attempted murder (§§ 664, 187; count 2); assault with a deadly weapon (§ 245, subd. (a)(1); count 3); and being a felon in possession of a firearm (§ 29800, subd. (a)(1); count 4). As to counts 1 and 2, the information further alleged that defendant personally used a deadly weapon. (§ 12022, subd. (b)(2).)

In November 2021, defendant's motion to sever counts 1 through 3 from count 4, was granted. The trial court cautioned, however, that severance did not necessarily mean all evidence of the handgun would be excluded from trial on counts 1 through 3. Defendant therefore moved *in limine* for exclusion of all evidence of his ownership of a handgun from the trial on counts 1 through 3, which was denied.

Defendant's first trial began on November 10, 2021, and proceeded through November 29, 2021. The first trial ended in a mistrial as the jury was unable to reach a verdict on any of counts 1 through 3. Thereafter, defendant refiled his motion *in limine* seeking to exclude any evidence of his ownership of a handgun from the trial on counts 1 through 3, which was again denied by the court on January 27, 2022.

---

[1] All further statutory references are to the Penal Code except as otherwise noted.

On February 18, 2022, a jury found defendant not guilty of murder on count 1, but guilty of the lesser included offense of voluntary manslaughter (§ 192, subd. (a)); not guilty of attempted murder on count 2; and guilty on count 3. The jury further found true that defendant personally used a deadly weapon in the commission of count 1. A second jury found defendant guilty on count 4.

On March 21, 2022, the trial court sentenced defendant to an aggregate term of 13 years in prison as follows: on count 1, 11 years (the upper term), plus a one-year enhancement pursuant to section 12022, subdivision (b)(1); on count 3, one year (the middle term), to be served consecutive to the sentence imposed on count 1; and on count 4, three years, to be served concurrently with the sentence for count 1.

Defendant timely appealed.

## FACTUAL SUMMARY

Defendant lived with his girlfriend L.F., her son Devon, and her son's girlfriend, Denysha Langston, in a house in Bakersfield. On May 5, 2020, the family was having a party at that house, where everyone was drinking alcohol. L.F.'s other son, Deon, became involved in a verbal and physical altercation with defendant at the party, following lewd comments from defendant to L.F. Defendant and L.F. left the party and went to defendant's uncle's house. The couple spent several hours at defendant's uncle's house before defendant and his uncle became involved in a physical altercation as well, and the couple left to return to their house around midnight. Upon arriving at their house, L.F. went inside to retrieve some of defendant's property for him. While L.F. was in the house, defendant began honking the horn of his truck.

Devon, who was also at the house, became angry that defendant was honking the horn, and went outside to confront defendant. Langston followed Devon outside, attempting to restrain him from confronting defendant. Devon nevertheless confronted defendant, and attempted to punch defendant as he sat in his truck. After striking or attempting to strike defendant, Devon realized he had been cut by a knife defendant held

3.

in his hand. As Devon returned to the house, Langston approached the truck to confront defendant. Defendant stabbed Langston one time in the chest through the window of the truck where he was seated. The stab wound penetrated Langston's heart, and she ultimately died from her injuries.

Defendant fled the scene after the stabbing. L.F. called 911. Later that night or early the next morning, L.F. went to the police station to discuss what had happened with the Bakersfield Police, particularly Detective Keith Cason. During L.F.'s interview with Cason, defendant called L.F. and asked her to retrieve some of his property—namely, his backpack, his phone, and his gun—and bring them to him.

On the morning of May 6, 2020, defendant was interviewed by Cason and Bakersfield Police Detective Randy Petris. During that interview, defendant acknowledged stabbing Langston. A video recording of that interview was played for the jury.

## DISCUSSION

### I.     THE TRIAL COURT DID NOT ERR IN ADMITTING EVIDENCE DEFENDANT POSSESSED A HANDGUN

According to defendant, the trial court erred by admitting evidence that defendant owned a handgun during trial on counts 1 through 3, which had been severed from count 4, because the evidence was not relevant and its prejudice outweighed its probative value. The People argue both that the evidence was relevant and not prejudicial, and that any error which may have occurred is harmless. We agree with the People.

Prior to trial, defendant moved *in limine* for an order excluding all evidence obtained during the search of L.F.'s house, including the observation of and seizure of the handgun, on the basis that it was irrelevant and constituted impermissible character evidence. The prosecution noted it intended to use the fact that the defendant requested L.F. obtain and provide his handgun and other items of property for him from her house as indicative of a plan to flee, and therefore, of a guilty state of mind. The trial court

4.

determined evidence that defendant intended to flee the area was relevant to his consciousness of guilt. Further, the court concluded, because it severed the felon in possession charge from the other charges and the jury would have no knowledge defendant was a felon, the jury would not know defendant could not lawfully possess a firearm. Therefore, the trial court decided the mere fact of defendant's ownership of a firearm was not prejudicial.

At trial, the prosecution introduced two pieces of evidence which had the effect of showing defendant owned a handgun, specifically, the testimony of L.F. and a photograph of the gun located during the search of her house. The existence of the gun was referenced in the prosecution's closing statement.

### A. Standard of Review

Defendant contends that, while evidentiary errors related to the admissibility of evidence are generally reviewed under the abuse of discretion standard, this question should be reviewed *de novo*. According to defendant, where there are no factual disputes, *de novo* review of evidentiary questions is appropriate. The People argue this question of admissibility must be reviewed under the abuse of discretion standard.

It is well established trial court rulings on the admissibility of evidence are reviewed for an abuse of discretion. (See, e.g., *People v. McCurdy* (2014) 59 Cal.4th 1063, 1095; *People v. Homick* (2012) 55 Cal.4th 816, 859; *People v. Waidla* (2000) 22 Cal.4th 690, 717.) None of the cases cited by defendant for the proposition that *de novo* review is appropriate here concerned the review standard for decisions related to the admissibility of evidence. (See *People v. Avila* (2006) 38 Cal.4th 491, 529 [concerning review standard for juror strikes pursuant to *Witherspoon v. Illinois* (1968) 391 U.S. 510, 522]; *People v. Maury* (2003) 30 Cal.4th 342, 404 [review standard for voluntariness of incriminating statements under due process clause]; *The People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems Inc.* (1999) 20 Cal.4th 1135, 1143–1144 [review standard for disqualification motions].)

In contrast, the Supreme Court has stated that "an appellate court applies the abuse of discretion standard of review to *any* ruling by a trial court on the admissibility of evidence, including, as noted, one that turns on the relevance of the evidence in question." (*People v. Waidla, supra*, 22 Cal.4th at p. 723, italics added.) "Relevancy is a legal issue for courts to answer." (*People v. Nelson* (2008) 43 Cal.4th 1242, 1265.) Despite relevancy being a legal issue, it is reviewed for abuse of discretion. Indeed, relevancy is only one of numerous legal issues decided in the context of admitting or refusing evidence over which appellate courts routinely defer to trial courts. (*People v. Parker* (2022) 13 Cal.5th 1, 39 [noting trial court rulings on relevancy and admissibility under Evidence Code sections 352 and 1101 are conducted under abuse of discretion standard]; *People v. Flinner* (2020) 10 Cal.5th 686, 727 [observing a trial court's finding of foundational facts related to admissibility of a writing is reviewed for abuse of discretion]; *People v. Landry* (2016) 2 Cal.5th 52, 73 [finding of statutory privilege reviewed for abuse of discretion]; *People v. Grimes* (2016) 1 Cal.5th 698, 711 [reviewing a decision regarding the statement-against-interest hearsay exception for abuse of discretion]; *People v. Brown* (2014) 59 Cal.4th 86, 101 [admissibility of expert testimony is reviewed for abuse of discretion].)

Defendant points to no authority stating a reviewing court should engage in *de novo* review on questions of admissibility of evidence under state law. While certain questions of evidentiary admissibility are reviewed *de novo* when the challenge is based on federal constitutional claims (see, e.g., *People v. Seijas* (2005) 36 Cal.4th 291, 304), no such constitutional claim is asserted here. Rather, defendant merely asserts the evidence was not relevant and was more prejudicial than probative. Abuse of discretion review applies.

> ### B. The Trial Court Did Not Err, Because the Evidence Was Relevant and Was Not Unduly Prejudicial

Defendant claims the evidence of defendant requesting his gun and other items be brought to him by L.F. after the stabbing was irrelevant, and even if it was not irrelevant, its probative value was outweighed by its undue prejudicial effect. " 'Relevant evidence' means evidence … having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Defendant's request to L.F. to retrieve his handgun and other property from their house was circumstantial evidence tending to show defendant planned to flee. A defendant's flight following a crime is circumstantial evidence of a consciousness of guilt. (*People v. Williams* (1988) 44 Cal.3d 1127, 1143, fn. 9; *People v. Jackson* (2005) 129 Cal.App.4th 129, 166, fn. 120; § 1127c.) Indeed, a flight instruction was given to the jury in this case. The issue of what this evidence meant, and whether it signified a knowledge of guilt, was a disputed factual issue placed before the jury. The prosecution contended in its closing arguments that defendant's request to retrieve property from L.F. was done with the intent to flee. The evidence was relevant within the meaning of section 210 of the Evidence Code.

Moreover, defendant has not shown undue prejudice here. The trial court "in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will … create substantial danger of undue prejudice." (Evid. Code, § 352.) Undue prejudice refers to the potential for the jury to use a particular fact to draw an impermissible inference or conclusion. (See, e.g., *People v. Fontana* (2010) 49 Cal.4th 351, 370; Evid. Code, § 1101 [prohibiting character evidence to prove conduct in conformity therewith, but not other facts].) The fact of defendant's prior felony convictions was not introduced at trial on counts 1 through 3. Therefore, that jury—as opposed to the jury seated for the separate trial on count 4—heard nothing to indicate that defendant's ownership of a firearm was in any way illegal. Mere ownership or possession of a firearm, without any indication that such ownership or possession is illegal, is not prejudicial. (See *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 599

["evidence that Beck possessed firearms was not unduly prejudicial since none of the firearms was illegal or used to shoot any victim"]; *id.* at 631–632.) The fact that defendant did not have the weapon within his actual possession differentiates this case from others in which courts have found that admitting evidence of possession of a deadly weapon can be construed as character evidence. (See, e.g. *People v. Barnwell* (2007) 41 Cal.4th 1038, 1056 ["When the prosecution relies on evidence regarding a specific type of weapon, it is error to admit evidence that other weapons were found in the defendant's possession, for such evidence tends to show not that he committed the crime, but only that he is the sort of person who carries deadly weapons."]; *People v. Henderson* (1976) 58 Cal.App.3d 349, 360 ["Evidence of possession of a weapon not used in the crime charged against a defendant leads logically only to an inference that defendant is the kind of person who surrounds himself with deadly weapons—a fact of no relevant consequence to determination of the guilt or innocence of the defendant."].) Not only did the jury here receive no evidence suggesting it was illegal for defendant to own a firearm, the evidence showed he was not actually in physical possession of the firearm at any point during the incident in question. Therefore, it merely showed defendant owned a handgun generally. Since mere ownership of a handgun is not illegal, this evidence was not unduly prejudicial.

### C. Even Assuming the Trial Court Erred, Arguendo, Any Error Was Harmless

Even if we assumed error occurred by admitting evidence that defendant owned a handgun, any such error was harmless. California law specifically directs harmless error review in relation to claims that evidence was inappropriately admitted. (Cal. Const., art. VI, § 13 ["No judgment shall be set aside … on the ground of … the improper admission … of evidence … unless … the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."]; Evid. Code, § 353, subd. (b).) "In a criminal case, a miscarriage of justice can only be found when the reviewing court determines it is

reasonably probable that a result more favorable to the defendant would have been reached had the trial court excluded the erroneously admitted evidence." (*People v. Lapenias* (2021) 67 Cal.App.5th 162, 170; *People v. Lazarus* (2015) 238 Cal.App.4th 734, 787, fn. 53.)

Any error in admitting evidence that defendant owned a handgun generally was harmless. There was never a dispute as to whether defendant killed the victim; he conceded from the start he stabbed the victim with the knife. Defendant was charged with murder, of which the jury found him not guilty. Instead, the jury found defendant guilty of the lesser included offense of voluntary manslaughter. Voluntary manslaughter can arise from an imperfect self-defense argument. (See *People v. Rios* (2000) 23 Cal.4th 450, 454 [explaining that an imperfect self-defense argument negates the element of malice, thus limiting the crime to manslaughter].) The jury's questions in this case focused on implied malice, and the sole piece of evidence requested by the jury was Devon's direct and cross-examination testimony. Devon did not testify about the existence of the handgun; L.F. did. Both of these, combined with a verdict of voluntary manslaughter, indicate that the jury accepted that defendant believed he was acting in self-defense, but did not agree defendant's beliefs regarding either the danger to himself or the amount of force necessary were reasonable. (CALCRIM No. 571.) The key area of inquiry for the jury was the reasonableness of the defendant's beliefs, not whether or not he possessed a deadly weapon. Even defendant agreed that he did. Therefore, any prejudice resulting from erroneous knowledge by the jury that defendant was the type of person who owned a handgun was minimal. There is no reason to believe defendant's mere ownership of a handgun, which was not used or in his physical possession, in any way affected the jury's inquiry about the reasonableness of the force used.

II.    THE TRIAL COURT ERRED DURING SENTENCING, BUT THE ERROR WAS HARMLESS

9.

Defendant contends the trial court's decision to sentence him to the upper term of 11 years on count 1 was based on a consideration of impermissible sentencing factors. Specifically, defendant contests the trial court improperly concluded (1) that he had not previously fulfilled his conditions of probation satisfactorily; and (2) that the court was imposing a concurrent term on count 4 despite being permitted to impose a consecutive term, without submitting the underlying facts to a jury for a determination beyond a reasonable doubt.[2]

### A.      Standard of Review

Defendant contends the trial court's sentencing decisions are subject to *de novo* review.  The People do not specifically address the standard of review, but suggest abuse of discretion review applies.

Sentencing decisions that involve a discretionary review of different factors are reviewed for abuse of discretion.  (See *People v. Sandoval* (2007) 41 Cal.4th 825, 847 (*Sandoval*); *People v. Walker* (2022) 86 Cal.App.5th 386, 394–95; *People v. Downey* (2000) 82 Cal.App.4th 899, 909.)  A court abuses its discretion when its determination "exceeds the bounds of reason, all of the circumstances being considered." (*People v. Giminez* (1975) 14 Cal.3d 68, 72.)  "The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' " (*Sandoval*, *supra*, at p. 847 [quoting *People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 978].)  A trial court abuses its discretion if it "relies upon circumstances that are not relevant to the decision or that

---

**2**      Defendant initially contended the trial court did not have sufficient evidence before it to find defendant had "numerous" prior convictions—the third factor in aggravation—but concedes in the reply brief that there was sufficient evidence for this finding based on the certified RAP sheet contained in the record below.

otherwise constitute an improper basis for decision," or if it fails to exercise discretion. (*Sandoval, supra,* at pp. 847–848.)

> ### B. The Trial Court Erred by Considering Aggravating Factors Outside the Statutory Scheme

The California Rules of Court set out various circumstances that can be found in aggravation of a crime. (See Cal. Rules of Court, rule 4.421.) Of relevance to this case, the trial court found true the following factors in aggravation and considered them during sentencing: (1) "[t]he defendant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences are being imposed"; (2) "[t]he defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness"; and (3) "[t]he defendant's prior performance on probation, mandatory supervision, postrelease community supervision, or parole was unsatisfactory." (Cal. Rules of Court, rule 4.421(a)(7), (b)(2), and (b)(5).)

Senate Bill No. 567 amended section 1170, subdivision (b), effective January 1, 2022. (Stats. 2021, ch. 731, § 1.3.) Subdivision (b) of section 1170 now states that, where a sentencing statute provides for three possible terms, the court shall impose a sentence "not to exceed the middle term," except when "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term" and the facts underlying those circumstances have either "been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(1)–(2).) However, "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

11.

Defendant has withdrawn his contention that the certified records of conviction presented to the trial court were not sufficient to show he had numerous prior convictions. Therefore, we do not discuss that issue further.

However, the jury was not asked to, and did not, find defendant's prior performance on probation, parole, and postrelease community supervision was unsatisfactory. This is error, under a plain text reading of the new statutory language, which requires *all* facts underlying the circumstances in aggravation to be found true beyond a reasonable doubt by the jury. (§ 1170, subd. (b)(2).)[3] Since no jury determined defendant's prior performance on probation was unsatisfactory, the trial court should not have relied on that factor in aggravation. Relying on a statutory basis for aggravation which has not been sufficiently proven under the statutory scheme is an abuse of discretion. (See *Sandoval*, *supra*, 41 Cal.4th at 847–848.)

### C. Any Error was Harmless

The People contend, regardless of whether there was error, any such error was harmless. We agree.

This court discussed the harmless error standard in reviewing these claims just last year. (See *People v. Dunn* (2022) 81 Cal.App.5th 394, 409–410.) The reviewing court must determine both "(1)(a) beyond a reasonable doubt whether the jury would have found one aggravating circumstance true beyond a reasonable doubt" and "(1)(b) whether there is a reasonable probability that the jury would have found any remaining aggravating circumstance(s) true beyond a reasonable doubt." (*Ibid.*) Step (1)(a) is also

---

**3** It seems unlikely the amendments to section 1170, subdivision (b), require proving to a jury that a particular crime could have been sentenced consecutively, but is instead being sentenced concurrently. The question of whether a sentence may be imposed consecutively or concurrently is, in most cases, likely to be a legal question for the trial court which has no underlying facts for a jury to determine. If this is the case, then there would be no error in failing to submit this to the jury. However, because we determine below that any error arising from failing to prove this to a jury is harmless, we do not decide that question here.

satisfied where the trial court "relied upon an aggravating circumstance that relied only upon the fact of defendant's prior convictions and a certified record of defendant's convictions was admitted." (*Id.* at p. 410, fn. 13.) "If all aggravating circumstances relied upon by the trial court would have been proved to the respective standards, any error was harmless." (*Id.* at p. 410.) If this is not the case, the reviewing court then asks "whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps." (*Ibid.*) If the answer is no, again, the error was harmless. If the answer is yes, the reviewing court will vacate the sentence and remand for resentencing consistent with section 1170, subdivision (b). (*See Dunn*, *supra*, at pp. 409–410.)

Defendant concedes there was sufficient evidence of his prior convictions for the trial court to find he had "numerous" prior convictions, and has withdrawn his assignment of error on that point. Accordingly, step (1)(a) of the *Dunn* test is satisfied.

Under step (1)(b), we must determine whether there is a reasonable probability the jury would not have found the factual circumstances underlying the remaining factors in aggravation not true beyond a reasonable doubt. Concerning the factor in aggravation related to satisfactory completion of prior probation, the jury would have found defendant had not satisfactorily completed his prior instances of probation. The record shows defendant was previously sentenced to probation in relation to the following charges: (1) violation of section 148.9, subdivision (a) (giving a false identity to a peace officer); (2) violation of Health and Safety Code section 11351.5 (possession for distribution of cocaine base); (3) violation of Health and Safety Code section 11360, subdivision (a) (transportation or importation of cannabis); (4) section 273d, subdivision (a) (corporal punishment or injury of a child); (5) and (6) two separate instances of violating Vehicle Code section 14601.1, subdivision (a) (driving with a suspended license). A number of these offenses occurred while defendant was already on probation from a prior offense:

13.

the third offense occurred while he was on probation for the second; the fifth offense occurred while he was on probation for the fourth; and the sixth offense occurred while he was on probation for *both* the fourth and fifth offenses. Additionally, records show multiple instances of probation violations, including at least one resulting in a 10-day jail sentence. It strains credulity to suggest this was satisfactory performance while on probation. There is no reasonable probability the jury would not have found true that defendant's prior performance on probation was unsatisfactory beyond a reasonable doubt.

Additionally, even if it was a jury question, there is no reasonable probability a jury would not have found true that a consecutive sentence could have been imposed on defendant in relation to count 4, but the trial court chose to impose a concurrent sentence. (See Cal. Rules of Court, rule 4.421(a)(7).) Defendant suggests, but does not directly argue, the trial court was incorrect in determining it would have been justified in sentencing defendant to a consecutive term on count 4. Because the felon in possession charge in count 4 was sufficiently different to warrant severing the trials, the crimes were "predominantly independent of each other," thereby justifying a consecutive sentence. (See Cal. Rules of Court, rule 4.425(a)(1); *People v. Oseguera* (1993) 20 Cal.App.4th 290, 294–295 [finding driving under the influence and being a felon in possession of a firearm were distinct acts justifying imposition of consecutive sentences].) While we are skeptical as to whether there are any "facts underlying" the circumstances as contemplated in section 1170, subdivision (b)(2) in determining whether California Rules of Court, rule 4.421(a)(7) is a proper factor in aggravation, we need not decide this, because any error is harmless. There is no reasonable probability the jury would not have found true any factual circumstance that might underlie that determination. Count 4 could have been sentenced consecutively, and it was not.

## DISPOSITION

The judgment is affirmed.

14.

                                        FRANSON, J.

WE CONCUR:


HILL, P. J.


PEÑA, J.